### ASSOCIATED OIL CO. v. MILLER et al.

(Circuit Court of Appeals, Fifth Circuit. December 1, 1920.)

No. 3558.

**Mines and minerals ⬅74—Person who will be affected by decree held indispensable party to suit by grantee of rights under lease.**

Where by a contract an oil company conveyed to another company all its rights in the oil and gas in leased lands for the purpose of development and operation, the parties to share in the production as therein provided, the grantor reserving the right to re-enter and terminate the con-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tract for default by the grantee, the grantor *held* an indispensable party to a suit by the grantee against the owner of a tract of the land to enforce its rights claimed under the lease.

Appeal from the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Suit in equity by the Associated Oil Company against W. L. Miller and others. Decree for defendants, and complainant appeals. Affirmed.

C. L. Carter, of Houston, Tex., for appellant.

O. C. Funderburk, of Eastland, Tex., and R. E. Hardwicke, of Ft. Worth, Tex., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. This case arises on a bill in equity filed in the United States District Court for the Northern District of Texas by the Associated Oil Company, a corporation chartered under the laws of California, and as such a citizen of California, the appellant, against W. L. Miller and wife and the Gulf Production Company, a corporation, all alleged to be citizens of Texas, the appellees, to enjoin them from in any way resisting or contesting the complainant's right of entry and use of the premises stated hereinafter, in the exercise of certain rights claimed by said complainant under an instrument executed between it and the Rio Bravo Oil Company, a corporation of and citizens of Texas. It was dismissed on motion of the defendants on the ground that the Rio Bravo Oil Company, a citizen of the same state as the defendants, was an indispensable party plaintiff thereto, and that said court was therefore without jurisdiction of the case.

The parties entered into an agreed statement of fact, by which it appeared that the rights of the complainant arose wholly under a conveyance signed by the Rio Bravo Oil Company and accepted by complainant in writing; the same being executed on the 7th day of July, 1919. The conveyance recited that in consideration of the sum of $10, and in consideration of the performance by the complainants of the terms and conditions thereinafter stipulated, the Rio Bravo Oil Company granted, bargained, sold, and conveyed to said complainant, subject to the performance of said conditions, all of those certain oil, gas, and mineral rights owned by the Rio Bravo Oil Company in and under 87 described tracts of land, including the N. W. $\frac{1}{4}$ of section 27, block 4, H. & T. C. Ry. Co. survey, Eastland county, Texas.

"Also all other oil, gas, and minerals or mineral rights, and all easements of every kind owned and held or claimed by the Rio Bravo Oil Company in Eastland county, Texas, and in Comanche county, Texas; it being the purpose of this conveyance to vest in the Associated Oil Company all such rights as the Rio Bravo Oil Company has in and to oil, gas and other minerals in and under lands in Eastland and Comanche counties, Texas, whether hereinabove particularly described or not, and also all rights and easements of any and every kind owned or held by it for the purpose of exploring for, producing, and marketing all such oil, gas, and other minerals.

"There is hereby conveyed also, all the rights of ingress and egress, rights of way, and all other rights and easements of any and every kind owned or held by the grantor in and to, over, or upon said premises, hereby investing the grantee with every such right and interest as the grantor has therein.

"To have and to hold the above-described oil, gas, and mineral rights, rights of way, and easements of any and every kind, unto the said Associated Oil Company, its successors and assigns, forever, upon the conditions following."

The conveyance declared its consideration to be as follows:

"The consideration to the grantor for the execution of this conveyance is the payment of the royalties and performance of the obligations hereinafter imposed upon the grantee, said payments and said obligations each being conditions upon default in the performance of which the rights herein conveyed to said grantee shall cease and terminate (unless such default is one that comes within the arbitration clause hereinafter set out), and all such rights shall thereupon be revested in the grantor, the Rio Bravo Oil Company.",

These conditions reserve to the Rio Bravo Oil Company: (a) The equal one-eighth part of all oil produced and saved from any of the premises above mentioned, or, at its election, the market price thereof prevailing the day the oil is run into the pipe line or storage tanks, with provision for time of payment in the event of such election. (b) If gas only is found, and the well or wells are operated for gas, the Rio Bravo Company receives at its election one-eighth of the gas or one-eighth of all sums realized from the sale of such gas. (c) For all gas produced from any oil well and used in the manufacturing of gasoline, or any other product, the Rio Bravo Oil Company is to receive at its election one-eighth of said gas, or one-eighth of all sums of money realized from the sales of said gas, gasoline, or other products. (d) In the event any minerals other than oil or gas are found in paying quantities, the Rio Bravo Oil Company shall receive as a royalty one-half of the sums realized from such minerals.

Then follow conditions requiring the opening of wells within certain specified times, and providing for the drilling or making of an offset well or wells, for the development or production of all minerals which may be found in paying quantities, for furnishing to the Rio Bravo Oil Company any or all information derived from drilling or development of any of the properties, with the right to have a representative present at all times, to assist in gauging and measuring all oil, gas, and other minerals, and with the right to inspection of all books and papers.

The contract then provides that the complainant shall at its own expense do all drilling and other development work, keeping an accurate account of such cost and expense; that the royalties above specified shall be first deducted from the value and proceeds of all oil and gas; that the complainant shall then reimburse itself for all cost and expense in said contract specified; and that one-half of the remainder of such production shall be paid or delivered, as provided in the case of royalties, to said Rio Bravo Oil Company.

Provision is made for arbitration in the event that either of the parties should conclude that any of the operations for development of the properties should be in a manner or way different from that provided in the contract. An extension of time is provided, if the carrying out of the contract is interrupted or delayed by certain specified causes, and that no divestiture of the complainant's title should become effective until the Rio Bravo Oil Company shall give 30 days' written

notice of its intention to enforce such divestiture, within which time the complainant may prevent the divestiture by performance of the conditions of the contract. The contract provides also for abandoning drilling or other development work on a tract covered by this conveyance, or if the production shall cease to be profitable; complainant having the right to remove all improvements it has placed on said tract.

It is contended by the complainant that the effect of this conveyance is to vest in it the entire full and complete estate in fee simple to the oil and other mineral rights in this tract of land, together with the right of entry for the purpose of taking the same; that it has been and is being prevented from so doing by the defendants, who claim to have certain rights as owners of the land, and who deny complainant's rights under said conveyance; that said claims of defendants are not valid; that they have no right to exclude complainant from said land; and that the assertion of this right on part of respondents constitutes a cloud upon complainant's title. The bill also alleges that the oil and gas owned by complainant under the tract of land above described will be drawn away and be an entire loss to the complainant; that the said oil and gas are being developed in lands contiguous to the described premises; and that unless an injunction is granted, as prayed in this case, irreparable damage to the complainant will follow.

The respondents say that the nature of the foregoing conveyance is to create an option in the complainant to enter upon this land for the purpose of prospecting for oil and gas and other minerals; and there is such a right, title, and interest reserved to the Rio Bravo Company that no decree can be rendered in this case without its presence as a party, as it will be necessarily and directly affected by such decree.

It is quite evident that, whether the effect of this conveyance is to vest a title to the oil, gas, and other minerals, therein described as conveyed to the complainant, as in the cases of Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, and Crabb v. Bell, (Tex. Civ. App.) 220 S. W. 623, or an option, as in the cases of National Oil & Pipe Line Co. et al. v. Teel (Tex. Civ. App.) 67 S. W. 545 (affirmed by the Supreme Court of Texas 95 Tex. 586, 68 S. W. 979), and Hitson v. Gilman (Tex. Civ. App.) 220 S. W. 140, the same does not divest the interest of the grantor in the entire oil, gas, and other minerals, but that it reserves to the Rio Bravo Oil Company an interest in each and every part of the oil and gas so conveyed. While the conveyance purports to grant the entire right in whatever oil and other minerals are contained in this land, it does so only for the purposes of developing and raising the same for the benefit of both grantor and grantee, and a failure to carry on these operations for joint account divests all title in complainant, and revests it in the Rio Bravo Oil Company. While a nominal consideration of $10 is mentioned, the instrument recites that—

"The consideration to the grantor is the payment of the royalties and the performance of the obligations hereinafter imposed upon the grantee, said payments and obligations each being conditions upon default in the performance of which the rights herein conveyed to said grantee shall cease and terminate (unless such default is one that comes within the arbitration clause herein-

after set out), and all such rights shall thereupon be revested in the grantor, the Rio Bravo Oil Company."

The consideration of the conveyance is to be derived from the exploration for the oil and other minerals in the land for the joint benefit of the two parties to the conveyance, reserving to the Rio Bravo Oil Company the title in kind to one-eighth of the oil and gas produced, at its election, and also a one-half interest in the remainder of the oil and gas so produced, after the payment of the royalty mentioned and the defraying of the expenses of production, as specified. The instrument is therefore an executory contract for the production of the oil and other minerals for the benefit of both the Rio Bravo Oil Company and complainants, and the Rio Bravo Oil Company has rights of re-entry and reinvestiture of title upon a failure of the complainant to perform its part of this contract, or upon its abandonment thereof.

The effect of the decree in this case, either for the complainant or against it, would operate as directly and effectively upon the rights of the Rio Bravo Oil Company under this contract as it would upon the rights of the Associated Oil Company. The situation of the Rio Bravo Oil Company comes directly within the description of an indispensable party, as laid down in the leading case of Shields v. Barrow, 17 How. 130, 15 L. Ed. 158:

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

The same question was presented to this court in the case of Vincent Oil Co. v. Gulf Refining Co. of Louisiana, 195 Fed. 434, 115 C. C. A. 336. Vincent and associates were the owners of 144 acres of land situated in Louisiana. They made a conveyance or lease conveying all oil, gas, and mineral in the land to one Staiti, a citizen of Texas, reserving a one-eighth royalty. Staiti transferred this lease to Vincent Oil Company. Vincent and associates, claiming that this lease had been forfeited and annulled, and treating it as void, leased a portion of said land to George W. Hooks. Hooks assigned one-half undivided interest in said lease to the Gulf Refining Company, a Louisiana corporation, and by a separate instrument at a later time assigned the other one-half interest to the Producers' Oil Company, a Texas corporation. The Vincent Oil Company filed a bill against the Gulf Refining Company, not making the Producers' Oil Company a party defendant, seeking relief alone against the Gulf Refining Company in respect to its one-half interest. It was conceded that the Producers' Oil Company was omitted because, being a Texas corporation and the assignor of complainant being a citizen of Texas, its presence would oust the jurisdiction of the court. The court held:

"It has always been the constant aim and purpose of an equity court to do complete justice by deciding and settling the rights of all persons interested in the subject of the suit, so as to make it safe to the parties to obey the orders of the court and prevent future litigation. To attempt to settle the disputes described in the bill without the presence of the Producers' Oil Company would not only affect its rights and possession, but would leave the

controversy itself in an unsettled condition—a condition tending to cause further litigation. * * * The principles announced in decisions which are controlling here fully sustain the view that the Producers' Oil Company is an indispensable party to this suit. California v. Southern Pacific Co., 157 U. S. 229, 15 Sup. Ct. 591, 39 L. Ed. 683; Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499; Barney v. Baltimore City, 6 Wall. 280, 18 L. Ed. 825; Christian v. Atlantic & N. C. Railroad, 133 U. S. 233, 241, 10 Sup. Ct. 260, 33 L. Ed. 589."

The present suit is brought to enforce the rights created by the contract entered into between the Rio Bravo Oil Company and the Associated Oil Company, the complainant. The prayer of the bill is to remove the adversary rights asserted by the respondents as a cloud upon the title to the interests described in said conveyance, so as to permit the carrying out by the complainant of its prospecting for said oil and minerals. The Rio Bravo Oil Company has a vital interest under said contract or conveyance. A decree adverse to the complainant will deprive the Rio Bravo Oil Company of all of its anticipated rights and benefits under this contract. A decree in favor of the complainant will inure equally to its benefit. The decree in this case, therefore, will operate as directly and effectively upon the rights of the Rio Bravo Oil Company as upon the rights of the Associated Oil Company. McConnell v. Dennis, 153 Fed. 547, 82 C. C. A. 501; Arkansas S. E. R. R. Co. v. Union Sawmill Co., 154 Fed. 304, 83 C. C. A. 224.

It is evident, therefore, that the court did not err in sustaining the motion to dismiss because of the absence of the Rio Bravo Oil Company as a party complainant to said cause, and the decree of the District Court is affirmed.