TAXPAYERS' ASS'N OF HARRIS COUNTY.
v. HOUSTON INDEPENDENT SCHOOL
DIST. et al.
No. 10296.

Court of Civil Appeals of Texas. Galveston.
April 4, 1935.

Rehearing Denied April 18, 1935.

J. S. Bracewell, of Houston, for appellant.

Andrews Kelley, Kurth & Campbell, M. E. Kurth, all of Houston, for appellees.

GRAVES, Justice.

The Taxpayers' Association appeals from a judgment of the Fifty-Fifth district court refusing it a temporary injunction against the Houston independent school district and its officials as such, whereby it sought to restrain the district and its school board from restoring in part, as of January 1, 1935, certain cuts it had made in all city teachers' salaries during the scholastic years of 1932 to 1935, and from expending, out of cash on hand at the end of 1934, $37,500 for the construction of 23 temporary school buildings, determined by it to have been necessitated from an unexpected overcrowded condition in the schools at that time, pursuant to a contract for the purpose it had made with the appellees Bond and the two Kennedys.

The learned trial court, before thus declining the application of appellant (a resident taxpaying corporation of Harris county, merely in that capacity for itself alone suing only the school district, its officials, and the building contractors, without joinder of or permission of intervention to any of its teachers, or other employees) to so harness the official discretion touching the matters at issue deemed by it to have been vested by existing law in the city school board, heard full evidence from both sides; from it—along with the pleadings and other record proceedings—the salient facts conclusively, if not undisputedly, appearing were these:

(1) The appellee school board was originally created by, and has ever since existed and done business by virtue of, the Special Act of the Thirty-Eighth Legislature of 1923 (chapter 91, p. 317, Laws 38th Legislature, Regular Session), which has never been expressly repealed, nor even impliedly modified or added to unless by the general state "Uniform Budget Law" of 1931, enacted by the Forty-Second Legislature (chapter 206, p. 339 [Vernon's Ann. Civ. St. art. 688 et seq., and Vernon's Ann. P. C. art. 414b]); this act gave the distinct plenary power to lease grounds, erect and equip school buildings, contract and be contracted with, and to control, supervise, and manage its schools, specially providing for the fixing of all employees' salaries by schedules to be printed as part of its standing rules, all changes therein to take effect only with the scholastic year following the one when made.

(2) With its powers, privileges, and duties so derived and comprehended, the governing body thereof, the school board, in due conformity to this law of its creation, made contracts and published the salary schedules of all its employees, including the teachers.

(3) In January of the respective years of 1932-33, however, the board—due to a prevalent economic depression—made effective, each for the scholastic year following its infliction, two successive temporary cuts in

these so theretofore fixed salaries of all its employees, first reducing those for the scholastic year of 1932–33 by 10 per cent., then those for the scholastic year of 1934–35 by an additional 17 per cent., the contracts for the former year carrying the 10 per cent. reduction, those for the latter one carrying both that and the succeeding 7 per cent. additional; that is, the amounts specified therein as being payable were those of the original schedules, less 10 per cent. for 1932–33, and less 10 per cent. plus 7 per cent. for 1934–35.

(4) As shown by the two successive resolutions of the board for the different scholastic years respectively suspending the salary schedules as on those dates existing and ordering the 10 and 7 per cent. reductions below the rates of pay prevailing prior to January 1, 1932, under the otherwise undisturbed contracts of all employees, as well as by the uncontroverted evidence, these suspensions were not only expressly made as emergency measures, but also upon the distinct recognition of that fact on both sides and the mutual agreement between the board and the employees that such reductions thereby made were only temporary, that the original pay basis of prior to 1932 was still in force and effect, except as so cut for the duration of the stated cause thereof, and if and when possible would be restored; that, pursuant thereto, the employees accepted the cuts, and all contracts thereafter entered into named the amounts as compensation to which they were severally entitled, under the schedule of salaries as it existed prior to such temporary suspensions, less the 10 and 7 percentages, "subject to budget," likewise "subject to revenues available, and such adjustments as might be deemed necessary by the Board"; up to January 1, 1935, both parties accordingly carried out these contracts, performing their several obligations thereunder, as therein specified.

(5) On February 4, 1935, at a time when there was not only an unexpected cash balance on hand of approximately $121,000, left over from the August 13th budget of 1934, but anticipated total revenues ahead for 1935 of $4,527,565 as against total estimated expenditures during 1934 of $4,285,127.22, the board, deeming. the contingencies at hand upon which it had so agreed to begin the return to the pre-existing salary schedule, the need for the buildings exigent, and the funds for both undertakings reasonably in sight, expressly amended this August 13th budget of the preceding year, effective as of January 1, 1935, so as, among other things, (1) to restore to the teachers and other employees a portion of the aggregate cuts so before visited upon them, thus complying with the stated understanding to that effect with them at that time, totaling some $188,000; and (2) to award contracts for the construction of the 23 temporary school buildings referred to supra, entailing the contemplated expenditure of about $37,500 more. It is the expenditures for these two purposes—aggregating $225,000—the appellant sought to enjoin.

The record contains neither averment nor intimation of anything other than the good-faith exercise for the public good of its best judgment on the part of the school board in ordering these expenditures, it merely being contended that it lacked the power under the law to do so, the specifications being that they were in violation of both the act creating the appellee in 1923 and the State Uniform Budget Law of 1931, as well as sections 53 and 55, article 3, of the Constitution of Texas, forbidding the granting of gratuities or increased compensations to individuals.

As against this attack, in the opinion of this court on the facts stated, the refusal of the writ may be upheld upon at least these considerations:

█ (1) There was a fatal want of parties in the failure to bring in the teachers and other school employees. Appellant seeks to defend this upon the sole ground that the action was one to restrain the expenditure of public money alone; no other relief being sought, and the contracts of the employees not being attacked. The vice in this position, however, lies in the undisputed fact of the mutual understanding set out supra upon which the salary cuts were inaugurated and accepted, to the effect that, if and when the financial stringency that caused their visitation was lifted, they would be restored; the service under them by the employees having been performed in the meantime, the action of the school board on February 4, 1935, determining, as was its exclusive province, that such condition, as well as any other impediment that might have stood in the way, had been removed, and ordering the beginning of the restorations in accord with such understanding, was nothing more than compliance with what would have been a legal obligation upon it any way; such mutual agreements between it and the teachers, being contemporaneous with and upon the same consideration as the contracts between them, were as much a part thereof as if they had been at the time expressly incorporated therein; wherefore, since this suit directly sought the

abrogation of a very material part of the contract between the school board and all its employees, it was an attack thereon at least pro tanto, and the employees, being in virtue thereof beneficially interested in the subject-matter of the suit, were necessary parties thereto, having the right, as they sought to do by intervention, to have their interests disposed of therein. Butman et al. v. Jones et al. (Tex. Civ. App.) 24 S.W.(2d) 796; Crystal Falls Common School District v. Sanders et al. (Tex. Civ. App.) 54 S.W.(2d) 834; County School Trustees et al. v. Common School District No. 6 et al. (Tex. Civ. App.) 284 S. W. 306; 32 Corpus Juris, 296; 32 Texas Jurisprudence, "Parties," § 88; 17 Texas Jurisprudence, "Equity," § 32; Joyce on Injunctions, § 374; Storey's Equity Pleading, § 72; People of State of California v. Southern Pacific Co., 157 U. S. 229, 15 S. Ct. 591, 39 L. Ed. 683; Associated Oil Co. v. Miller (C. C. A.) 269 F. 16; Chicago, M., St. P. & P. R. Co. v. Adams County (C. C. A.) 72 F.(2d) 816; McMurray v. Brotherhood of Railroad Trainmen (C. C. A.) 54 F.(2d) 923; King v. Commissioners Court of Throckmorton County, 10 Tex. Civ. App. 114, 30 S. W. 257; Bradford v. Westbrook, 39 Tex. Civ. App. 638, 88 S. W. 382; Pendleton, Treasurer, v. Ferguson, 99 Tex. 296, 89 S. W. 758; Bonner v. City of Texarkana (Tex. Civ. App.) 227 S. W. 505; Basham v. Holcombe (Tex. Civ. App.) 240 S. W. 691; Cook v. Putnam (Tex. Civ. App.) 283 S. W. 649.

■■ (2) As the able trial judge held, the State Uniform Budget Law is not applicable to the Houston independent school district, since it neither expressly nor impliedly repealed the provisions of the prior special act creating such school district relating to budgets and the power of its school board to contract and expend funds, as therein provided. Admittedly there is no express repeal, the later act making no such declaration with reference to the older one, so the familiar rule that one by implication will not be favored [Sullivan v. City of Galveston (Tex. Civ. App.) 17 S.W.(2d) 478, 489; Cole v. State, 106 Tex. 472, 170 S. W. 1036] applies. Especially are the considerations for holding no repeal to have resulted in this instance exemplified with reference to their similar fact conditions in the cited Sullivan Case, which was by this court. It was there said: "*That the general act by its terms is made applicable to cities incorporated under special charters does not evidence a purpose to make it applicable to such cities having provisions in their special charters prescribing the manner of designating or selecting depositories for the city's funds*"—citing authorities. (Italics ours.)

Furthermore, it appears from the face of the Uniform Budget Law that it was not intended to be made applicable in every instance, and that its name of "uniform" was not meant to signify universality of application to every independent school district in the state, but only that kind of application to all units within the class of such districts its objective was to control, to wit, the large group of city and other independent districts that had already been, or might thereafter be, created to operate only under the special acts giving them being, because:

(a) It was so passed, without express repeal thereof, after the appellee district had, within the imputed knowledge of the Legislature, been operating for eight years under its special act, with this express provision in its section 36: "This law shall be cumulative of all other General Laws on the subject of independent school districts, not in conflict herewith, and where not otherwise provided herein, such General Laws shall apply; *but in case of conflict with such General Laws, the provisions of this Act shall govern.*"

(b) It provides that, where a city has already in its charter set up different requirements providing for the specification of a budget of expenditures, such provisions should control, there being added a further recitation excepting counties having 350,000 population or more according to the next preceding federal census; its clear import would therefore seem to be a recognition, as affects school districts, that numerous special acts had been passed prior thereto, creating these districts, which might be in conflict with the general laws, and that this one was no more intended to run counter to or obliterate them than others of its general class; indeed, its emergency clause seems to mean just that, which, in so far as applicable, is this:

"The fact that the State does not now have an effective budget law and the further fact that such law is urgently needed to conserve tax funds of the State, the County and *various school districts*, creates an emergency and an imperative public necessity," etc. Acts 1931, c. 206, § 22.

Moreover, as was also the case in Sullivan v. City of Galveston, supra, there is plain conflict between the special act creating the appellee district and this Uniform Budget Law in several material respects: In the former the business manager is made the budget officer, whereas in the latter the president of the board of trustees is made such;

in the special act it is provided that the budget shall be made on or before the first Monday of May of each year, while in the latter that must be done not later than August 20th of each year; in the latter also, subject to certain exceptions, it is declared that no public funds of the district shall be expended in any manner other than as set out in the adopted budget, whereas no such limitation is contained in the former, the only restriction with reference to the expenditures of money contained therein being in its section 15, providing that current expenses for any school year shall not exceed the current estimated taxes and income for that year. See, also, Andrews v. City of Beaumont, 51 Tex. Civ. App. 625, 113 S. W. 614; Paul v. State, 48 Tex. Civ. App. 25, 106 S. W. 448; City of Laredo v. Martin, 52 Tex. 548; Fortinberry v. State (Tex. Com. App.) 283 S. W. 146.

(3) If, however, the preceding conclusion is erroneous and it should be held the budget law is applicable to the appellee district, then it should be further held that this appellee had complied substantially with the terms thereof with respect to its budget, in that it did, on August 13, 1934, adopt the same after giving notice thereof, and filed it with the county clerk of Harris county; then later on, that is, on February 4, 1935, as the recitation of facts supra has shown, it expressly amended such budget so as to provide funds within the same for the purpose of making the expenditures inveighed against in this suit. In this connection, section 20a of the Uniform Budget Law (Vernon's Ann. Civ. St. art. 689a—20), contains the express proviso to the effect that nothing in the act contained shall prevent the trustees, or other school governing bodies, from making changes in the budget for school purposes. As heretofore shown, the record here discloses that, not only was that done at the time and in the manner before recited, but that prior to the adoption of such amended budget a committee representing the appellant association was given the opportunity to and did fully discuss with the appellee's board of education the advisability of their taking such action.

(4) The partial restoration on February 4, 1935 (effective January 1st of that year), of the temporary reductions in salary schedules that had prevailed prior to January 1, 1932, did not constitute an increase in such original and prevailing salaries; hence were not in violation of the special act creating the appellee district or of the invoked provisions of the state Constitution, because such originally prevailing salary schedules and the contracts from which they proceeded had never been abrogated, but instead, due to the financial stringency that caused them, had merely been temporarily suspended as an emergency measure, upon the distinct and mutual understanding between all parties that such was the case and that they would be so restored if and when the cause of making them had been removed; since, therefore, the undisputed proof indicated that the sole cause for such suspensions had been removed, and the school board, after so finding, ordered the restoration made at the time and in the manner above specified, it violated no provision of any of the laws invoked against it in so doing; especially is this true as concerns the 1923 special law creating it, which, as stated, gave the board of education of the district full power to act in all matters for which the corporation was created, including the management and control over its properties as well as the power to contract and be contracted with in its behalf. Prior to the first cut in January of 1932, the board had strictly complied with the provisions of section 15 of this act requiring the fixing and printing as part of its rules of all the salary schedules; that order, initially cutting the pre-existing salary schedules, as well as the succeeding one of the next year, were, with the consent, acquiescence, understanding, and acceptance of both the board and its employees, only made as temporary emergency measures due to the prevailing financial depression, with like mutual contemplation and agreement of all concerned, in the absence of other impediments, that they would be restored if and when such financial emergency abated. It consequently becomes well-nigh self-evident that no infraction of the law under which it was operating was thereby committed by the board of education, that body having thus in all material respects been careful to condition its obligations upon the express requirements of that act with reference to such salary schedules by making them subject to the budget, to the revenues available, to any readjustments the board might thereafter deem necessary, and "to all Texas state laws which apply to Teachers." If it had not been for its having thus made both cuts with the understanding that such restoration would subsequently be made on the alleviation of the only cause of their infliction, there would have been no occasion for specifying in the subsequent contracts, as the salary to be paid, the original schedules back of January 1, 1932, less these two emergency cuts, and subject to the budget; in

other words, it is too plain for argument that such original salary schedules were never abrogated, nor intended to be by either party thereto, and a careful examination of this special act constituting the charter of its existence fails to disclose any provision or intendment prohibiting the board from subsequently making yearly contracts with its employees upon the basis of such original schedules, less such amounts as may have been mutually agreed to be deducted therefrom during the life of the depression that were to be wiped off the slate if and when it ended. To hold otherwise would seem to undermine without a rationale the general power over its schools and the entire management and control thereof, so vested in the board of education. To call that an increase in salaries within the prohibition of this act and within the constitutional provisions interposed against it would clearly take from the board of education the power to manage and control the mere incidental affairs of its household that the other broad commissions of authority in the act plainly meant to give it. This court must assume in the state of the record, as pointed out supra, there being nothing attacking or in any wise questioning the good-faith exercise of its best judgment and discretion for the public good on the part of the Board in this respect, that it so conscientiously acted, and, when that is done, the further conclusion must be that it simply was carrying out the understandings it had had with its teachers when the temporary cuts were made, upon in like manner finding out, happily for itself and the public, that the depression had been lifted by the previously unanticipated inflow of nearly double the estimated amount of delinquent taxes, thereby giving it ample revenues for the restoration.

(5) The appellant, through its counsel, the able, frank, and very helpful, Mr. Bracewell, voluntarily in its brief concedes, and this court agrees, that "if the same (State uniform budget law) is not applicable, we concede that the Board had the power to enter into the contract for the buildings in the manner it did"; wherefore, if the conclusion that the Budget Law is not applicable be sound, that ends the controversy so far as the contemplated expenditure for the temporary buildings is concerned.

(6) In any event, however, whether or not the Uniform Budget Law applies, under the undisputed facts, the appellee board was well within its powers in authorizing expenditures for the temporary buildings; as indicated, not only section 15 of the special act creating the district conferred on its board the power to construct and equip school buildings, together with all other authority necessary for the proper accomplishment of the purpose of its existence, specifying only that current expenses for any school or fiscal year should not exceed the estimated income for that year, but by the express terms of sections 18 and 20a of the Uniform Budget Law itself (Vernon's Ann. Civ. St. arts. 689a—18, 689a—20), a supplementary budget—such to all intents and purposes as was expressly promulgated by the appellee board here with reference to these building expenditures—is authorized to cover unforeseen expenses when rendered necessary by just such emergencies as arose in this instance after the regular budget has been prepared, adopted, and published, that is, the supervening of reasonably unanticipated overcrowded conditions in the school buildings in the district.

As preceding findings and conclusions have disclosed, the concurrence and occurrence of all the conditions specified in both the laws under consideration as justifying such an amendment of and supplement to the regular yearly budget as was acted upon here with reference to these temporary buildings existed when the board came to consider the erection thereof; that is, not only had the overcrowded condition of the existing buildings occurred, but at the end of 1934 there had been left over in cash from an unanticipated increase in delinquent tax payments the $121,000, which was utilized pro tanto for that purpose, the orders of the board making the necessary transfers in accounts, amending the budget of August 13, 1934, to so provide, giving the public notice, and finally authorizing the specific contracts for the constructions, all being done in due compliance with the provisions of both the laws in question; in these circumstances, the terms of the laws themselves vindicated the course thus pursued.

From these conclusions it follows that the judgment should be affirmed; it has been so ordered.

Affirmed.