**CHEVRON U. S. A., INC.**

v.

**Clarence AGUILLARD et al.**

**Civ. A. No. 80–183–A.**

United States District Court,
M. D. Louisiana.

June 18, 1980.

See also, D.C., 496 F.Supp. 1038.

Robert T. Jorden, Kenneth E. Gordon, Jr., Liskow & Lewis, Lafayette, La., William R. Pitts, Liskow & Lewis, John C. Christian, M. Taylor Darden, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for plaintiff.

David M. Ellison, Jr., Ellison & Smith, Baton Rouge, La., for defendants.

## MEMORANDUM OPINION

JOHN V. PARKER, Chief Judge.

In this diversity action, plaintiff, Chevron, seeks a declaratory judgment that a number of mineral leases obtained by it in 1975 from the defendant landowners are still in full force and effect. Chevron is, for diversity purposes, a citizen of California and all the defendants, landowners and holders of top leases, are citizens of either Louisiana or Texas.

Defendants move to dismiss because they claim that Chevron has failed to join Odessa Natural Corporation ("Odessa"), with which Chevron entered a "farm-out" agreement in January, 1980, relating to these leases. All parties agree that Odessa is a citizen of Texas and that joinder would eliminate complete diversity of citizenship and thus destroy jurisdiction under 28 U.S.C. § 1332. The landowners insist that Odessa (and its assignees, all of whom are collectively referred to as "Odessa") must be joined under Rule 19, Fed.R.Civ.P. The mineral lessee insists, on the other hand, that this action may proceed to its conclusion without Odessa. The Court has been favored with extensive and well-written briefs by all counsel, for which gratitude is hereby expressed.

Basically, Rule 19 requires joinder of indispensable persons. If an indispensable person cannot be joined, then the Court must make a determination as to whether "in equity and good conscience" the action should proceed without him or be dismissed. Odessa cannot be joined because joinder would deprive the Court of jurisdiction over the subject matter of the action.

Accordingly, we must determine first whether Odessa is an indispensable party within Rule 19(a). The answer depends, of course, upon the facts. The farm-out agreement, which is reproduced in the appendix to this opinion, consists of a Telex from Odessa to Chevron accepting a verbal farm-out, a letter dated January 17, 1980, from Chevron to Odessa specifying "basic trade specifications that will be incorporated into a formal letter agreement" to which is attached a plat [not reproduced], and a letter dated March 28, 1980, from Odessa to Chevron modifying some of the "trade specifications." The January 17th letter provides, in part:

"If productive, said well earns an undivided 60% interest in the entire farmout area to total depth drilled and logged plus 100'. However, Odessa earns to all depths if the well is drilled and logged to a total depth of 19,500'." (This percentage was modified by the March 28th agreement but the same concept prevails.)

The January 17th letter also requires Odessa to commence operations prior to March 10, 1980, requires that Odessa must timely apply for three 640-acre commissioner's units on the farm-out acreage, provides for an overriding royalty in favor of Chevron, provides that Chevron will participate in the drilling of a test well in a percentage agreed upon, and provides that Odessa will protect, indemnify and save Chevron free and harmless from all claims. The March 28th letter provides that Chevron will be responsible for and bear 25 percent of all damages and Odessa will be responsible for and bear 75 percent of damages; each party to pay its own attorney and no indemnity agreement in favor of Chevron.

██ Farm-out agreements are frequently utilized in the petroleum industry in instances where the owner of a mineral lease is unable or unwilling to drill on a lease which is nearing expiration but is willing to assign an interest to another who will assume the drilling obligations and save the lease from expiring. Frequently, an overriding royalty is retained and such agreements are usually evidenced by informal letter agreements. In other words, a farm-out agreement is a contract to assign oil and lease rights in acreage upon the completion of a drilling obligation and performance of the other provisions therein contained. It is an executory contract and until it is fully performed and the assignment actually executed, there is no privity between the lessor and the assignee. 3 Summers Oil and Gas Law § 544 (1958). See, also, *Associated Oil Co. v. Miller*, 269 F. 16 (5th Cir. 1920), *writ den.*, 256 U.S. 697, 41 S.Ct. 537, 65 L.Ed. 1176; Williams and Meyers, Oil and Gas Law § 432(d) (1977). Louisiana views farm-out agreements as contracts subject to suspensive conditions. When the obligation is dependent upon a future and uncertain event, the obligation cannot be executed until after the happening of the event. *Superior Oil Co. v. Cox*, 307 So.2d 350 (La.1975); LSA-C.C. art. 2043. The farm-out agreement here involved provides that if Odessa completes a productive well and fulfills the other requirements of the agreement, Chevron be-

comes obligated to transfer a stipulated interest in the mineral leases to it. The assignment or transfer of the interest in the leases will not be and cannot be executed until after Odessa has completed the well to the stipulated depth and the well turns out to be productive.

Odessa has no present legal interest in the mineral leases which are the subject of this litigation. If and when it completes the well as provided in the farm-out agreement, Chevron will become obligated to execute the necessary documents to transfer an interest to Odessa and then and only then will Odessa become a co-owner of the leases.

██ Under Rule 19(a), a person is indispensable if:

" . . . (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . . "

Rule 19 was amended in 1966 and it now mandates a determination of indispensability based upon pragmatic considerations as opposed to "technical or abstract character of the rights or obligations." *Doty v. St. Mary Parish Land Co.*, 598 F.2d 885 (5th Cir. 1979). Defendants argue strenuously and at length that in the absence of Odessa, complete relief cannot be accorded among those who are parties at this time. It is clear that all of Odessa's rights arise out of the farm-out agreement between it and Chevron. It has no privity of contract and no direct relationship with any of the landowners at this time. Only when Chevron actually executes an assignment of interest in the mineral leases will Odessa have any relationship with these landowners. Under those circumstances, Odessa, since the as-

signment of an interest in the mineral leases will come long after this litigation commenced, will be bound by the judgment of this Court. Complete relief can be adjudged in this Court to Chevron if it should win and to the defendant landowners if they should win. If Chevron wins, the leases will be declared to be in full force and effect and Odessa can enforce its contract with Chevron and require it to transfer an interest in those leases. If the landowners win, then the mineral leases will be cancelled, and Odessa will have no claims against anyone.

The second matter which the Court must consider under Rule 19(a) is whether the alleged indispensable person claims an interesting relating to the subject of the action and is so situated that disposition in his absence may, as a practical matter, impair or impede his ability to protect his interest. As we have seen, Odessa does not really claim an interest in the subject of this action. It is certainly interested in Chevron winning the lawsuit, because only if Chevron wins and it drills a productive well will Odessa be entitled to demand that Chevron transfer to it an interest in the leases. Odessa thus clearly has a financial interest in the outcome of this litigation, but that is not the sort of interest contemplated by Rule 19, 3A Moore's Federal Practice ¶ 19.07–1[2]. As a practical matter, Odessa's only claims under the farm-out agreement will be against Chevron and this litigation will in no way impair Odessa's ability to protect its interest vis-a-vis Chevron.

Finally, Rule 19(a)(2)(ii) charges that the Court consider whether nonjoinder would leave any of the persons already parties to the litigation exposed to a substantial risk of inconsistent obligations. As we have pointed out, Odessa has no claim against any of the other parties to this litigation except Chevron and the trial of this litigation to its conclusion will not leave any of the landowners exposed to any possibility of inconsistent judgments involving his interests. If Chevron wins and Odessa successfully completes a well, then Chevron will be obligated to transfer an interest to Odessa, and Odessa may judicially enforce that obli-

gation. None of the defendant landowners and their assignees or their top lessees will be involved nor will any claims be made upon them. If the landowners win this litigation, then Chevron's leases will be cancelled and no claims will be made by Odessa against any of these parties.

The Court is not convinced by cases cited by defendants holding that mineral royalty owners are indispensable parties in actions on the mineral lease. *Calcote v. Texas Pacific Coal and Oil Co.*, 157 F.2d 216 (5th Cir. 1946), cert. den., 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671, and *Hilton v. Atlantic Refining Co.*, 327 F.2d 217 (5th Cir. 1964). It is plain that mineral royalty owners have a present legally enforceable interest in the lease and they are distinguishable from a person operating under a farm-out contract. *See Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975), cert. den., *Susenkewa v. Kleppe*, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752, holding that a coal lessor is an indispensable party in an action by a third person to cancel the lease is also not persuasive. The same may be said for *Cole v. Continental Oil Co.*, 240 F.Supp. 642 (W.D. Okl.1965), holding that a mineral lease assignor who reserved production payments was an indispensable party to an action by the lessor against the assignee to cancel the lease for nonpayment of delay rentals. *Doty v. St. Mary Parish Land Co., supra,* held that a mineral lessee was an indispensable party in a declaratory judgment action to determine ownership of the land. This is obvious since if the person from whom the mineral lessee obtained the lease was held not to own the land, then the mineral lease would be invalid. There was clearly a present interest (the mineral lease then existing) which would be directly affected by the outcome of the litigation. That is not the situation presently before this Court since Odessa has no present interest in the mineral lease, nor is it a royalty owner.

The most interesting case cited by defendants is *Associated Oil Co. v. Miller*, 269 F. 16 (5th Cir. 1920). That case is the reverse of the situation before this Court. There the litigation was between the person

holding rights under the farm-out agreement (perhaps we can call him the "farm-outee") and the landowner. The farm-outee was attempting to judicially enforce its right to go upon the property and drill the well. The Court held that the person granting rights under the farm-out agreement (perhaps we can call him the "farm-outor") was an indispensable party to that litigation. Clearly, the farm-outor owned the mineral lease, in the first place, and retained that interest without regard to the activities of the other party to the farm-out agreement. That case is therefore distinguishable.

The Court concludes that in many respects the rights granted to Odessa under the farm-out agreement are similar to those granted to the holder of an unexercised option and the reasoning of *Owens-Illinois, Inc. v. Lake Shore Land Co., Inc.*, 610 F.2d 1185 (3rd Cir. 1979), is persuasive. That case involved a lease of land rather than a mineral lease and, of course, did not involve any of Louisiana's unique mineral laws. It is, nevertheless, instructive regarding Rule 19 and indispensable parties. Plaintiff was the lessee under a lease granted by the landowner in 1967. The lease contained an option to purchase. In 1973 plaintiff subleased the premises to a third person and also granted it an option to purchase the premises. Plaintiff (lessee) notified defendant that it was exercising its option to purchase and, when defendant refused to convey title, filed a declaratory judgment action. The landowner moved to dismiss by reason of failure to join an indispensable party (the sublessee) whose joinder would defeat diversity jurisdiction. The sublessee there was in this respect similar to the position occupied by Odessa here. The Court held that the holder of the sublease was not an indispensable party, that all of its rights arose from the 1973 contract and that it was not the owner of the present interest in the subject of the litigation. Here, Odessa is not an indispensable party.

In any event, joinder is not required under Rule 19(a)(2)(i) because it is apparent that Odessa's interests are fully represented by Chevron. *Toney v. White*, 476 F.2d 203 (5th Cir. 1973).

Finally, it is clear that the judgment rendered in this litigation will be res judicata insofar as Odessa's claims are concerned. Odessa, if it ever acquires an interest in the mineral leases or a royalty interest, will do so only after completion of a successful well and upon transfer from Chevron. It will, therefore, be in every respect a successor to the interest of Chevron, who is a party of record. Res judicata thus will apply to Odessa. *Quinette v. Delhommer*, 247 La. 1121, 176 So.2d 399 (1965); *Scurlock Oil Co. v. Getty Oil Co.*, 294 So.2d 810 (La.1974); 1B Moore's Federal Practice ¶ 0.411[1].

For the foregoing reasons, the motion to dismiss is DENIED.

### APPENDIX

9

WU TELEX NLN

CHEVRONUSA NLN

1225P

NSA118(1255)(1–025395S016)PD 01/16/80 1252

TWX ELPASO ODSA

185 ODESSA TX JANUARY 16

VMS MR. BEN MARTIN

CHEVRON U.K.

111 TULANE AVE

NEW ORLEANS, LA 70112

RE: WEST PROFIT ISLAND AREA, 5 S.—11 E., POINTE COUPEE PH., A.

VHIS IS TO NOTIFY YOU THAT, SUBJECT TO DEPT. OF CONSERVATION APPROVAL OF THE PROPOSED UNITS AS DISCUSSED AND SUBJECT TO OUR APPROVAL OF THE FULL FORMAL AGREEMENT (WITH OPERATING AGREEMENT), ODESSA NATURAL CORPORATION WILL ACCEPT THE FARMOUT DISCUSSED WITH YOUR LAND AND

GEOLOGICAL DEPARTMENTS ON 1–14–80.

VNC

JACK R. MUNDELL

Chevron U.S.A. Inc.

1111 Tulane Avenue, New Orleans, LA. 70112

January 17, 1980

Farmout Agreement
Rougon Area
Pointe Coupee Parish, Louisiana
Re: Your West Profit Island Area

Mr. Fred Dischler
Odessa Natural Corporation
c/o X–PLOR
218 Rue Beauregard
P. O. Box 52332
Lafayette, Louisiana 70505

Dear Mr. Dischler:

In reference to your verbal acceptance on January 15, 1980 of Chevron's proposed farmout trade in the subject area as confirmed by your teletype message to us of January 16, 1980, hereinbelow are the basic trade specifications that will be incorporated into a formal letter agreement:

1. Well Location: Mutually acceptable location in the 640-acre tract designated on the attached plat as Tract II.

2. Well Depth: 19,500' or depth sufficient to test sands encountered between 18,470' and 19,130' on the 1 inch ISF log in the Chevron U.S.A. Inc., Bueche Heirs No. 1 well located in Section 27, T–5–S, R–11–E, Pointe Coupee Parish, Louisiana.

3. Commencement Date: Odessa is required to commence operations on Tract II prior to March 10, 1980.

4. Reservations: Chevron will reserve an overriding royalty of 25% less lease burdens, which, at Chevron's option, will be convertible to a 40% working interest as to farmout acreage within Tract II at payout.

5. Farmout Area: Area outlined in blue on the attached plat, covering approximately 1850 acres.

6. Depth and Acreage Earned: If productive, said well earns an undivided 60% interest in the entire farmout area to total depth drilled and logged plus 100'. However, Odessa earns to all depths if the well is drilled and logged to a total depth of 19,500'.

7. Other Terms:

(a) Each party shall have the right to take in kind.

(b) Odessa must timely apply for three (3) 640-acre Commissioner's units, such units to conform with Tracts I, II and III denoted on the attached plat. Farmout area will be adjusted, if necessary, to conform with the approved Commissioner's units.

(c) Chevron will participate in the drilling of the test well in Tract II to the extent of approximately 22% working interest. Latter percentage is based on Chevron's retained acreage in Tract II. Working interest percentages will be adjusted, if necessary, to conform with the approved Commissioner's unit for Tract II.

(d) Formal letter agreement will contain provisions for a substitute well and Chevron's option to take over the well in Tract II by notification thereof within 24 hours after our receipt of your notice to abandon same.

(e) Joint operations will be conducted pursuant to a mutually acceptable operating agreement providing for a 300% penalty for non-consent operations.

Inasmuch as time is of the essence, you have Chevron's permission to enter upon the leased premises to conduct operations preparatory to the drilling of said well in Tract II. However, in granting such permission, you agree to protect, indemnify and save Chevron free and harmless from all claims, damages, demands and causes of action arising directly or indirectly in connection with all such operations and to relieve us from any and all liability incurred as a result of such operations.

Subject to the formal letter agreement, which is in preparation, we ask that you indicate your acceptance of the above terms by signing and returning the attached duplicate of this letter.

Yours very truly,
(s) B B Martin, Jr.
B. B. Martin, Jr.
District Land Supervisor

ODESSA NATURAL CORPORATION
P.O. BOX 3908
ODESSA, TEXAS 79760
915-337-2811

March 28, 1980

Chevron U.S.A., Inc.
Eastern Region Exploration, Land & Production
1111 Tulane Avenue
New Orleans, Louisiana 70112

Attn: Mr. B. B. Martin

Re: Farmout Agreement dated 1/17/80
Rougon Area
Pointe Coupee Parish, Louisiana
(ONC–WB's W. Profit Island Area)

Gentlemen:

Pursuant to our meeting in your offices the afternoon of March 25, 1980, following is Wagner & Brown's and Odessa Natural Corporation's understanding of the various points of accord reached regarding amendment of the subject Agreement:

1. Under Specification 4., Chevron's overriding royalty will be convertible to a 25% working interest rather than the stated 40%.

2. Under Specification 5., the Farmout Area would be extended on the north to include the P. V. Rougon, the L. Saizan, the G. R. Williams, the S. G. Moses and the G. J. Saizan tracts. Also, you are attempting to negotiate a new lease on the L. S. Loup tract which, if you are successful, will be included.

3. Specification 6. would be amended to reflect that we would earn an undivided 75% in the farmout acreage lying within Tract II and an undivided 60% interest in the balance of the farmout lands.

4. The next to last paragraph of said Agreement shall be amended to reflect that Chevron will be responsible for and bear 25% of all damages and Odessa-Wagner & Brown shall be responsible for and bear 75% of such damages. Each party shall retain and pay its own attorneys. Odessa and Wagner & Brown do not agree to and are not expected to protect, indemnify and save Chevron free and harmless as stated in this paragraph. All such matters shall be defended jointly and in full cooperation with each other.

With respect to the covenant made with the commissioner to boost the royalty on certain leases and make a one-time payment to certain lessors, it was agreed that Odessa would have the instrument(s) prepared to effect compliance with said covenant and would tender the payment. Chevron would have the opportunity to review and approve such instrument(s) prior to circulation by Odessa to the lessors. Costs of said one-time payment would be borne 75% by Odessa-Wagner & Brown and 25% by Chevron.

Although your proposal of the 75%/25% split on the one-time payment costs was not protested at our said meeting we submit that such split seems entirely appropriate on that portion of the leasehold lying within Tract II (Unit AA) but that a 60%/40% split would seem more equitable on the balance of the lands.

We are pursuing operations on the # 1 Aguillard drillsite and plan to move the rig next week; however our acceptance of the full formal Agreement referenced in the said 1/17/80 Farmout Agreement is, necessarily, conditioned upon 1.) our securing an acceptable opinion from our counsel as to our exposure in this matter and 2.) our approval of said full, formal Agreement.

Very truly yours,

ODESSA NATURAL CORPORATION

(s) Jack R. Mundell
Jack R. Mundell
Director—Land Department