# CHRISTIAN *v.* ATLANTIC AND NORTH CAROLINA RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NORTH CAROLINA.

No. 46. Argued October 30, 1889. — Decided January 27, 1890.

A State is an indispensable party to any proceeding in equity in which its property is sought to be taken and subjected to the payment of its obligations.

The State of North Carolina subscribed in 1856 for capital stock in a railway company which had been incorporated by its legislature, issued its bonds with thirty years to run, sold them, and with the proceeds paid its subscription, and received certificates of stock therefor, which certificates it never parted with and still holds. In the act incorporating the company and authorizing the issue of the bonds it was provided that as security for their redemption "the public faith of the State" "is hereby pledged to the holders," "and in addition thereto all the stock held by the State" in the railroad company "shall be pledged for that purpose" and that "any dividend" on the stock "shall be applied to the payment of the interest accruing on said coupon bonds." The State being in default in the payment of the interest due on the bonds since 1868, a

bondholder, who was a citizen of Virginia, brought suit in the Circuit Court of the United States in the Eastern District of North Carolina against the Railroad Company, its president and directors, the person holding the proxy of the State upon the stock held by it, and the treasurer of the State, praying to have the complainant's bonds decreed to be a lien upon the stock owned by the State and upon any dividends that might be declared thereon, and that such dividends might be paid to complainant and to such bondholders as might join in the suit, and for the sale of the stock if the dividends should prove insufficient, and for an account, and for the appointment of a receiver, and for an injunction; *Held*, that, as the State was an indispensable party to the suit, the bill must be dismissed.

In EQUITY. Decree dismissing the bill, from which the complainants appealed. The case is stated in the opinion.

*Mr. Joseph B. Batchelor* and *Mr. Samuel F. Phillips*, (with whom were *Mr. W. H. Lamar* and *Mr. J. G. Zachry* on the brief,) for appellants, cited: *Beale* v. *White*, 94 U. S. 382; *Wilson* v. *Boyce*, 92 U. S. 320; *White Water Valley Canal Co.* v. *Vallette*, 21 How. 414; *Barings* v. *Dabney*, 19 Wall. 1; *Woodson* v. *Murdock*, 22 Wall. 351; *United States* v. *Union Pacific Railroad*, 91 U. S. 72; *Ketchum* v. *St. Louis*, 101 U. S. 306; *Whitehead* v. *Vineyard*, 50 Missouri, 30; *Collins* v. *Central Bank of Georgia*, 1 Georgia, 435; *Swasey* v. *North Carolina Railroad*, 1 Hughes, 17; *S. C.* 71 North Carolina, 571; *Ingram* v. *Kirkpatrick*, 6 Iredell Eq. 463; *S. C.* 51 Am. Dec. 428; *Osborn* v. *Bank of the United States*, 9 Wheat. 738; *United States* v. *Peters*, 5 Cranch, 115; *Curran* v. *Arkansas*, 15 How. 304; *Woodruff* v. *Trapnall*, 10 How. 190, 206; *Furman* v. *Nichols*, 8 Wall. 44; *Bank of the United States* v. *Planters' Bank*, 9 Wheat. 904; *Briscoe* v. *Bank of Kentucky*, 11 Pet. 257; *Darrington* v. *Bank of Alabama*, 13 How. 9; *State* v. *Stoll*, 17 Wall. 425; *Elliott* v. *Vanvoorst*, 3 Wall. Jr. C. Ct. 299; *Wabash & Erie Canal* v. *Beers*, 2 Black, 448; *United States* v. *Wilder*, 3 Sumner, 308; *Davis* v. *Gray*, 16 Wall. 203; *Board of Liquidation* v. *McComb*, 92 U. S. 531; *Louisiana* v. *Jumel*, 107 U. S. 711; *Cunningham* v. *Macon & Brunswick Railroad*, 109 U. S. 446; *United States* v. *Lee*, 106 U. S. 196; *Vase* v. *Grant*, 15 Mass. 505; *Wood* v. *Dummer*, 3 Mason, 308; *Upton* v. *Tribilcock*, 91

U. S. 45 ; Union Bank of Tennessee v. The State, 9 Yerger, 490 ; Slaymaker v. Gettysburg Bank, 10 Penn. St. 373 ; Hutchins v. State Bank, 12 Met. 421 ; Palmer v. Merrill, 6 Cush. 282 ; S. C. 52 Am. Dec. 782 ; Chester Glass Co. v. Dewey, 16 Mass. 94 ; S. C. 8 Am. Dec. 128 ; Boston Music Hall Association v. Cory, 129 Mass. 435 ; Telegraph Co. v. Davenport, 97 U. S. 369 ; Mechanic's Bank v. Seton, 1 Pet. 299 ; Morehead v. Western Railroad Co., 96 N. C. 362 ; Androscoggin Railroad v. Auburn Bank, 48 Maine, 335 ; Winslow v. Mitchell, 2 Story, 630 ; Cameron v. McRoberts, 3 Wheat. 591 ; Hogan v. Walker, 14 How. 29, 36 ; Payne v. Hook, 7 Wall. 425 ; Hagood v. Southern, 117 U. S. 52.

Mr. R. H. Battle, for appellees, cited : Robinson v. Hurley, 11 Iowa, 410 ; S. C. 79 Am. Dec. 497 ; Kemp v. Westbrook, 1 Ves. Sen. 278 ; Vanderzee v. Willis, 3 Bro. Ch. 21 ; Greither v. Alexander, 15 Iowa, 470 ; Terrell v. Allison, 21 Wall. 289 ; Robertson v. Carson, 19 Wall. 94 ; Shields v. Barrow, 17 How. 130 ; Russell v. Clarke, 7 Cranch, 59, 98 ; Ribon v. Railroad Companies, 16 Wall. 446 ; Bank v. Carrollton Railroad, 11 Wall. 624 ; Williams v. Bankhead, 19 Wall. 563 ; Poindexter v. Greenhow, 114 U. S. 270 ; In re Ayers, 123 U. S. 443 ; Cunningham v. Macon & Brunswick Railroad, 109 U. S. 446 ; The Siren, 7 Wall. 152 ; Levey v. Stockslager, 129 U. S. 470 ; Briggs v. Light Boats, 11 Allen, 157.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The State of North Carolina, by virtue of an act of its legislature, passed 12th February, 1855, and through its board of internal improvement, subscribed for $1,066,600 of the capital stock of The Atlantic and North Carolina Railroad Company, a corporation created by act of the legislature of said State for the purpose of building a railroad from Beaufort to Goldsborough. In order to raise money to pay for this stock, the board of internal improvement, by virtue of the same act, issued the bonds of the State, signed by the governor and countersigned by the public treasurer, each for the sum of five hundred dollars, and in the following form, to wit :

" $500.00. UNITED STATES OF AMERICA. $500.00.

" It is hereby certified that the State of North Carolina 'is justly indebted to ——.—— or bearer five hundred dollars, redeemable in good and lawful money of the United States, at the Bank of the Republic, in the city of New York, on the first day of January, eighteen hundred and eighty-six, with interest thereon at the rate of six per cent per annum, payable half-yearly, at the said bank, on the first days of July and January in each year from the date of this bond until the principal be paid, on surrendering the proper coupon hereto annexed. In witness whereof the governor of the said state, in virtue of power conferred by law, hath signed this bond and caused the great seal of the state to be hereunto affixed, and her public treasurer hath countersigned the same at the seat of government of the said state, this first day of January, eighteen hundred and fifty-six.

'[The great seal of the State of North Carolina.]

" (Signed) THOMAS BRAGG, *Governor.*

" Countersigned :

D. W. COURTS, *Public Treasurer.*"

" Issued under an act to amend an act entitled An Act to incorporate the Atlantic & North Carolina Railroad Company and the North Carolina & Western Railroad Company, chapter 232."

The act which authorized the issue of these bonds contained the following guaranty of their payment (sect. 10) :

" *Be it further enacted,* That as security for the redemption of said certificates of debt the public faith of the State of North Carolina is hereby pledged to the holders thereof, and in addition thereto all the stock held by the State in the 'Atlantic and North Carolina Railroad Company' hereby created shall be pledged for that purpose, and any dividend of profit, which may from time to time be declared on the stock held by the State as aforesaid, shall be applied to the payment of the interest accruing on said coupon bonds; but until such dividends of profit may be declared, it shall be the

duty of the treasurer, and he is hereby authorized and directed, to pay all such interest as may accrue out of any moneys in the treasury, not otherwise appropriated." Laws N. C. 1854-5, 301, c. 232, § 10.

The State received certificates for the stock subscribed and still holds the same, which stock is represented in the meetings of the stockholders of the railroad company by a proxy appointed by the governor of the State, by virtue of the charter of the railroad company.

William E. Christian, a citizen of Virginia, the complainant in this suit, is the holder of ten of the bonds issued as aforesaid; and as no interest had been paid thereon since the year 1868, he filed this bill in July, 1883, in behalf of himself and all other holders of the bonds referred to who should come in and contribute to the expenses of the suit; and he made defendants to the suit the Atlantic and North Carolina Railroad Company, the president and directors of said company, personally, F. M. Simmons, the proxy representing the stock owned by the State, and J. M. Worth, treasurer of the State. The bill sets forth the material parts of the acts in question; which acts created the company and authorized the board of internal improvements, on behalf of the State, to subscribe for two-thirds of the capital stock of the company; and, for that purpose, to borrow money on the credit of the State and issue bonds therefor. It particularly sets forth the section before referred to, which guaranteed the payment of the bonds, and thereto pledged the stock held by the State. It states the fact of the subscription of the stock and the issue of the bonds, and alleges that the complainant is the *bona fide* holder for value of ten of the bonds, whose numbers are given, all having interest coupons attached, the first payable January 1, 1869, and one on each bond for every six months thereafter. The bill then avers that, ever since the year 1868, the State has neglected and refused to make any provision for the payment of the interest, and that all interest accruing since that time remains due. As the next averment indicates the legal view on which the bill seems to be founded, we quote it in full. It alleges as follows, to wit:

"That the aforesaid certificates of debt or bonds are, by virtue of the act of the general assembly of the said State of North Carolina hereinbefore recited, and of the pledges therein made by the said State, a lien upon the 10,666 shares of stock owned and held by said State in the said The Atlantic and North Carolina Railroad Company, in payment for which the said bonds or certificates of debt were issued, and upon all dividends of profits that have been and that may hereafter be declared upon said stock, and that the holders of said certificates, among whom is your orator, are in equity and good conscience entitled to have and receive all such dividends of profits as the same are paid for and upon account of the interest due and accruing on said certificates."

The bill then states that it appears from the report of the officers of the railroad company made to the annual meeting of stockholders in June, 1881, that for the preceding fiscal year the company had received more money than was expended in running and operating the road; and that, on the 1st of July, 1881, the company leased all its property to The Midland North Carolina Railroad Company for the sum of $40,000 per year, the lessee to keep the same in good repair; and then adds:

"That these sums not being required for the necessary expenses of said company, or a large part thereof, should have been distributed to and among the stockholders of said company by way of dividends, and that the holders of the coupons of said bonds or certificates, among whom is your orator, are entitled in equity and good conscience to have whatever sum may be received by the State as and for dividends on the stock owned by said State in said company appropriated to the payment of the interest due and in arrears on said bonds."

The bill further states that the Midland Company having failed to comply with its contract, the lease has been declared forfeited and rescinded, and the property has been restored to the management of the Atlantic and North Carolina Railroad Company.

The bill then states on information and belief that it is the purpose and intent of the directors to again lease the road and

property of the company, to which the complainant objects for reasons set forth in the bill, and asks for an injunction to prevent the same being done; but as this part of the bill and the relief sought in relation thereto was abandoned at the hearing in the court below, and is not urged on this appeal, it is unnecessary to notice it further, except to quote the concluding paragraph which states the nature of the claim of the bondholders upon the stock owned by the State in the railroad company, and is apposite to a full understanding of complainant's position. It is as follows, to wit:

"XXII. That the holders of said bonds, having a lien on the said stock for the payment of the principal and interest of their said debt, are in equity the real owners of said stock, and that the same should be applied by said State, through its proper officers, to the payment of said debt, and that the State should do nothing herself nor allow anything to be done by her officers or by her associates in said company which would destroy or impair the value of this security to her said creditors, and he insists, being so advised, that it is contrary to equity and good conscience for the proxy of the State to give his consent and thereby the consent of the State to any contract of lease to be made by said company, without the consent and concurrence of the holders of said bonds, until the State shall have made adequate provisions for the payment of said debt, both principal and interest."

The prayer of the bill, so far as relates to the stock held by the State in the railroad company, and to the dividends thereon, is substantially as follows, to wit:

1st. That the bonds or certificates of debt held by the complainant and others may be decreed to be a lien upon the said stock and dividends until paid or redeemed.

2d. That all dividends on said stock may be paid to the complainant and the other bondholders who may join him in the suit.

3d. That if said dividends prove insufficient for this purpose, a sale of said stock, or so much thereof as may be necessary to pay said certificates, may be made under the decree of the court.

4th. That an account may be taken of the amount due for interest, etc.

5th. That a receiver may be appointed to take possession of the dividends hereafter payable to the State.

6th. That the officers of the railroad company may be enjoined from paying to the state treasurer, or to any other person on behalf of the State, any dividends which may accrue to the State, and that the treasurer may be enjoined from receiving the same.

To this bill, Simmons, the proxy of the state stock, and Worth, the state treasurer, filed a joint answer, separate from the other defendants, admitting the material statements of the bill, so far as relates to the origin and character of the stock and bonds referred to, but denying that any dividends were or could be made on the stock, in consequence of the expenses and legitimate obligations of the railroad company. The concluding averment of their answer is as follows, to wit:

"VII. These defendants, further answering, say that two certificates of stock, one for one thousand and sixty-six shares, and the other for two hundred shares, have been issued to the State of North Carolina by the defendant company, which certificates, together with the stock represented thereby, are the property of the State and are in her possession, and have been for a long time before the commencement of this suit, with authority in no one to part with the same except by the direction of the general assembly of the State; and these defendants are advised that, so being the property of the State and in her actual possession, they cannot be taken therefrom or in anywise be affected by any decree rendered in a cause to which the State is not a party; and these defendants rely upon the fact that the State is not a party to this suit as if the same had been specially pleaded."

The other defendants also filed answers to the bill, but it is unnecessary to refer to them, or to other incidental proceedings which took place in the cause. The important facts on which relief is claimed are as above recited from the statements of the pleadings. The bill was dismissed by the court below, and from that decree the present appeal was taken.

From the foregoing summary of the statements and prayer of the bill we see that its object and purpose is to obtain, in behalf of the complainant and other bondholders, the adjudication of a lien upon the stock held by the State of North Carolina in the Atlantic and North Carolina Railroad Company, and upon the dividends on said stock; and the enforcement of that lien by requiring said dividends to be paid to the bondholders, in satisfaction of the amount due on their bonds; and, if these are insufficient, by a sale of said stock, or so much thereof as may be necessary; aided by the appointment of a receiver to take possession of said dividends; and an injunction to restrain the railroad company, and its officers, from paying to the state treasurer, or to any other person on behalf of the State, and to restrain said treasurer from receiving any moneys accruing and payable as dividends on said stock.

How the dividends due to the State can be seized and appropriated to the payment of the bonds, or how the stock held and owned by the State can be sold and transferred, through the medium of a suit in equity, without making the State a party to the suit, it is difficult to comprehend. The general rule certainly is, that all persons whose interests are directly to be affected by a suit in chancery must be made parties. *Russell* v. *Clarke's Executors*, 7 Cranch, 68, 98; *Shields* v. *Barrow*, 17 How. 130, 139; *Ribon* v. *Railroad Cos.*, 16 Wall. 446; *Williams* v. *Bankhead*, 19 Wall. 563; *McArthur* v. *Scott*, 113 U. S. 340. The exceptions to the rule are pointed out in these cases, and do not touch the present case. The State has a direct interest to be affected by such a proceeding. The proposal is to take the property of the State and apply it to the payment of its debts due to the plaintiffs, and to do it through the instrumentality of a court of equity.

The ground on which it is contended that this may be done is, that the property is affected by a pledge, and may, therefore, be dealt with *in rem*. But a pledge, in the legal sense, requires to be delivered to the pledgee. He must have the possession of it. He may then, in default of payment of the debt for which the thing is pledged, sell it for the purpose of raising the amount, by merely giving proper notice to the

pledgor. In the case of stocks and other choses in action, the pledgee must have possession of the certificate or other documentary title, with a transfer executed to himself, or in blank, (unless payable to bearer,) so as to give him the control and power of disposal of it. Such things are then called pledges, but more generally collaterals: and they may be used in the same manner as pledges properly so called. If there is no transfer attached to, or accompanying the document, it is imperfect as a pledge, and requires a resort to a court of equity to give it effect.

These propositions are so elementary that they hardly need a citation of authorities to support them. Reference may be made, however, to Story on Bailments, § 297, *et seq.; Casey* v. *Cavaroc*, 96 U. S. 467.

The stock and dividends of the State of North Carolina, now in question, have nothing about them in the nature of a pledge. The 10th section of the act of 1855, relied on by the complainant for creating a pledge, must be understood as using the word in a popular and not in a technical sense. That section declares, first, that as security for the redemption of said certificates of debt the public faith of the State is hereby pledged to the holders thereof. This is no more than a solemn promise on the part of the State, to redeem the certificates. The section next, in addition to the pledge of the public faith, declares that all the stock held by the State in the Atlantic and North Carolina Railroad Company shall be pledged for the same purpose, and any dividend of profit declared thereon shall be applied to the payment of the interest on said bonds. This was nothing more than a promise that the stock should be held and set apart for the payment of the bonds, and that the dividends should be applied to the interest. There was no actual pledge. It was no more of a pledge than is made by a farmer when he pledges his growing crop, or his stock of cattle, for the payment of a debt, without any delivery thereof. He does not use the word in its technical, but in its popular sense. His language may amount to a parol mortgage, if such a mortgage can be created; but that is all. So in this case, the pledge given by the State in a statute may have amounted

to a mortgage, but it could amount to nothing more; and if a mortgage, it did not place the mortgagee in possession, but gave him merely a naked right to have the property appropriated and applied to the payment of his debt. But how is that right to be asserted? If the mortgagor be a private person, the mortgagee may cite him into court and have a decree for the foreclosure and sale of the property. The mortgagor, or his assignee, would be a necessary party in such a proceeding. Even when absent, beyond the reach of process, he must still be made a party and at least constructively cited by publication or otherwise. This is established by the authorities before referred to, and many more might be cited to the same effect. The proceeding is a suit against the party to obtain, by decree of court, the benefit of the mortgage right. But where the mortgagor in possession is a sovereign state, no such proceeding can be maintained. The mortgagee's right against the State may be just as good and valid, in a moral point of view, as if it were against an individual. But the State cannot be brought into court or sued by a private party without its consent. It was at first held by this court that, under the Constitution of the United States, a State might be sued in it by a citizen of another State, or of a foreign State; but it was declared by the 11th amendment that the judicial power of the United States shall not be construed to extend to such suits. *New Hampshire* v. *Louisiana*, 108 U. S. 76; *Louisiana* v. *Jumel*, 107 U. S. 711; *Parsons* v. *Marye*, 114 U. S. 325; *Hagood* v. *Southern*, 117 U. S. 52; *In re Ayers*, 123 U. S. 443.

There is a class of cases, undoubtedly, in which the interests of the State may be indirectly affected by a judicial proceeding without making it a party. Cases of this sort may arise in courts of equity where property is brought under its jurisdiction for foreclosure or some other proceeding, and the State, not having the title in fee or the possession of the property, has some lien upon it, or claim against it, as a judgment against the mortgagor, subsequent to the mortgage. In such a case the foreclosure and sale of the property will not be prevented by the interest which the State has in it; but its

right of redemption will remain the same as before. Such cases do not affect the present, in which the object is to take and appropriate the State's property for the purpose of satisfying its obligations. *The Siren*, 7 Wall. 152, 157; *Briggs* v. *Light Boats*, 11 Allen, 157, 173.

It remains true, therefore, that a bill will not lie to effect a foreclosure and sale, or to obtain possession of property belonging to the State; and for the very plain reason that, in such a case, the State is a necessary party and cannot be sued. This was distinctly held by this court in the case of *Cunningham* . v. *Macon & Brunswick Railroad*, 109 U. S. 446. In that case the State of Georgia had endorsed the bonds of a railroad company, taking a lien upon the railroad as security. The company failed to pay the interest of the endorsed bonds, and the governor of the State, under the power vested in him, took possession of the road, and put it into the hands of a receiver, who sold it to the State of Georgia and made a conveyance to the State accordingly. Thereupon the State, by the governor and other officers and directors, took possession of and operated the road. The holders of a second mortgage on the same property filed a bill to foreclose their mortgage and to set aside the sale made by the receiver as invalid, and to have priority of lien for reasons stated in the bill. They made the governor, the state treasurer, and the state directors of the road parties defendant. This court held that the bill would not lie, because the State was an indispensable party. Mr. Justice Miller, delivering the opinion of the court, said: "Whenever it can be clearly seen that the State is an indispensable party to enable the court, according to the rules which govern its procedure, to grant the relief sought, it will refuse to take jurisdiction." Again: "In the case now under consideration the State of Georgia is an indispensable party. It is, in fact, the only proper defendant in the case. No one sued has any personal interest in the matter, or any official authority to grant the relief asked. No foreclosure suit can be sustained without the State, because she has the legal title to the property, and the purchaser under a foreclosure decree would get no title in the absence of the State. The

State is in the actual possession of the property, and the court can deliver no possession to the purchaser. The entire interest adverse to the plaintiff in this suit is the interest of the State of Georgia in the property, of which she has both the title and possession."

These remarks are strikingly applicable to the present case. The State of North Carolina is the only party really concerned. The whole proceeding is virtually against her. The object of the suit is to get possession of her property; to sequester her dividends (if any there may be) and to compel the payment of them to the complainants; to seize and sell her stock in the railroad, stock of which she is in sole possession. Be it true that the bondholders have a lien on said dividends and stock, it is not a lien that can be enforced without suit; and that a suit against the State.

We are referred to a decision made at the circuit by Chief Justice Waite in the case of *Swasey* v. *North Carolina Railroad Company*, 1 Hughes C. Ct. 17, in which, in a case similar to the present, it was held that, inasmuch as the shares of stock belonging to the State were pledged for the payment of the complainants' bonds, they were held by the railroad company as trustee for the bondholders as well as the State; and that if the trustee was a party to the suit, it was not necessary that the State should be a party. We are not certain that we are fully in possession of the facts of that case; but if they were the same as in the present case, with the highest respect for the opinions of the lamented Chief Justice, we cannot assent to the conclusions to which he arrived. In the general principles, that a State cannot be sued; that its property, in the possession of its own officers and agents, cannot be reached by its creditors by means of judicial process; and that in any such proceeding the State is an indispensable party; Chief Justice Waite certainly did express his emphatic concurrence, in the able opinion delivered by him on behalf of the court, in the case of *Louisiana* v. *Jumel*, 107 U. S. 711. His views in the Swasey case seem to have been based on the notion that the stock of the State was lodged in the hands of the railroad company as a trustee for the parties concerned, and was not

in the hands of the State itself, or of its immediate officers and agents. But if the facts in that case were as he supposed them to be, the facts in the present case are certainly different from that. No stockholder of any company ever had more perfect possession and ownership of his stock than the State of North Carolina has of the stock in question. There may be contract claims against it; but they are claims against the State, because based solely on the contract of the State, and not on possession.

We think that the State is an indispensable party to any proceeding in equity in which its property is sought to be taken and subjected to the payment of its obligations; and that the present suit is of that character, and cannot be sustained.

The decree of the Circuit Court is *Affirmed.*