**IBERIA PETROLEUM CORPORATION v. ACADIAN PRODUCTION CORPORATION OF LOUISIANA et al.**

**Civ. No. 349.**

District Court, W. D. Louisiana, Opelousas Division.

Sept. 13, 1940.

T. Semmes Walmsley, of New Orleans, La., for applicants.

James L. Helm, of New Iberia, La., for plaintiff in the State court.

John R. Land, Jr., of New Orleans, La., for Acadian Production Corporation of Louisiana.

DAWKINS, District Judge.

The plaintiff, Iberia Petroleum Corporation, a Louisiana Corporation (hereafter called Iberia), filed its original suit in the State court for St. Martin Parish, against the Acadian Production Corporation of Louisiana, also created under the laws of said State (hereafter called Acadian). Subsequently, on May 23, 1940, certain citizens of the State of Florida intervened. Thereafter, on June 21, 1940, plaintiff filed its first amended petition and on August 23, 1940, a second supplemental petition, making Evelyn J. and A. C. Buxton and J. W. Milner, citizens of the State of Mississippi, T. Semmes Walmsley, Michel Provosty and Patrick W. Murphy, citizens of the State of Louisiana, parties defendant.

The said residents and citizens of the State of Mississippi first presented to the State court an application to remove the cause to this court upon the ground, that as to them, the pleadings presented a separable controversy, and removal was denied. They have now made application to this court for an order of removal upon the same grounds. The question presented, therefore, is whether or not the case discloses a controversy between the plaintiff, on the one part, and the citizens of Mississippi, on the other part, which can be wholly determined without the presence of the Louisiana citizens or are the latter indispensable parties?

The original petition in the State court alleges that the plaintiff, a citizen of this State, was the owner of a mineral lease on certain lands situated in St. Martin Parish; that on January 22, 1940, it assigned to the defendant, Acadian, a "sixty-eight and three-fourths per cent (68 3/4ths%) in petitioner's seven-eighths (7/8ths) right and title" in said lease for certain stated considerations, which included the obligation that the assignee should, on or before February 1, 1940, begin drilling upon the premises under conditions and stipulations, the details of which are unnecessary to set

forth at this time. . Copy of the contract of assignment is annexed and made part of the petition. The petition charges, in substance, that the defendant has breached the said contract of assignment in certain particulars, also unnecessary to recite; that defendant has disposed of "interests and oil payments out of its assigned interest in said leased property, to an amount exceeding such interest, and with the result that petitioner is prevented from utilizing the remainder of said corporation's interest in the said lease in the discharge of obligations created against said lease, or in the discharge of the obligations due by said corporation to commence drilling of another test well on said property"; that the defendant is without adequate funds to finance said operations; and that it has otherwise done and sought to do things which would prevent petitioner from carrying out the terms of the lease contract with the owner of the property. Petitioner prayed that the assignment of January 22, 1940, be annulled and cancelled, and that the right to further sue for damages be reserved.

The petition of intervention of the Florida citizens, with whom was joined Alex W. Swords, a citizen of Louisiana, alleges that the plaintiff, Iberia, and the defendant, Acadian, are engaged in a controversy, which among other things, involves "the right of control and management" of the mineral lease in question; that said lease was originally acquired by George J. Helis from the fee owner, and by him transferred to Iberia. It otherwise substantially tracks the allegations of the original petition, commends the management of Helis of the lease and prays for service upon both plaintiff and defendant. It also prays that the "court, ex-officio, order judicial sequestration" of the lease and its appurtenances "during the pendency of this suit * * * and prays for general relief." It did not specifically join in or resist the prayer for annulment, nor does it set forth exactly how the interests of intervenors were acquired, but I think it must be inferred that the same came out of the assigned interest to Acadian of sixty-eight and three-fourths per cent (68 3/4%) of the working seventh-eighths (7/8) of the lease.

The first amendment set forth further acts in detail constituting the alleged breach of the assignment, which it was claimed, justified the annulment, and repeated the prayer for relief.

The second amended petition makes parties defendant the present applicants for removal. It alleges that Acadian had executed conveyances of interest in the lease as follows:

To Evelyn J. and A. C. Buxton, "domiciled in Gulfport, Mississippi", two separate interests each of "one-one hundred and twenty eighth (1/128th) of sixty-eight and three-fourths per cent (68 3/4ths%) of seven-eighths (7/8ths) proportion of the oil, gas and other minerals produced therefrom * * *";

To T. Semmes Walmsley, "a resident of the city of New Orleans, State of Louisiana, one-sixty-fourth (1/64th) of sixty-eight and three-fourths per cent (68 3/4ths%) of seven-eighths (7/8ths) proportion" of said minerals.

To Michel Provosty and Patrick W. Murphy, "residents of the city of New Orleans, State of Louisiana, a certain oil payment of fifteen hundred dollars ($1500.00) out of one-thirty-second (1/32nd) of all oil produced from said lease * * *"; and

To J. W. Milner, "a resident of the city of Gulfport, State of Mississippi, an oil payment of twenty-five hundred dollars ($2500.00) out of one-one hundred and twenty-eighth (1/128th) of sixty-eight and three-fourths per cent (68 3/4ths%) of seven-eighths (7/8ths) of all oil produced from said Lease * * *."

Further, that all of "said attempted conveyances were made out of only such oil or other minerals which Acadian Production Corporation of Louisiana was entitled to receive after payment of all expenses, as provided by various contracts referred to in proceedings heretofore filed herein."

The petition again alleges that the assignment by Iberia to Acadian of January 22, 1940, has been breached and is "null, void and of no effect for the reasons set forth in the supplemental and amended petitions, heretofore filed herein, and further, the assignments from said Acadian Production Corporation of Louisiana to the above named parties, all as set forth in the first paragraph hereof, are wholly null, void and of no effect and should be so decreed and be cancelled and erased from the public record." Further, that certain oil has been produced from the lease after assignment, which the amendment claims, for the reasons alleged, belongs to plaintiff in the state court.

This second amendment prayed for personal service upon the named citizens of Louisiana and for the appointment of an attorney or curator ad hoc under the Louisiana law, for the non-residents, and for judgment against all of the defendants named in both the original and amended petitions decreeing "the contract of January 22nd, 1940, to be null, void and of no effect, and decreeing the cancellation and recision of said sale by petitioner to Acadian * * * of the interest covered by the said assignment", and further, "decreeing that all of said assignments described in the first paragraph of this petition be decreed null, void and of no effect, and ordering the cancellation and recision of the same"; that petitioner "be recognized and be decreed to be the owner of all oil, gas or other minerals heretofore or hereafter produced from wells on the property described in supplemental petitions herein filed, on which the above could have made claim, except for the nullity of the respective conveyances under which they claim."

The petition for removal to this court states that application has been made to and refused by the Judge of the State court; that petitioners are defendants in said suit; that the amount involved exceeds $3,000; that plaintiff at the time of said application to the State court was and is now a citizen of Louisiana, while the applicants, defendants therein, were and are citizens of the State of Mississippi; and "that petitioners have a separable controversy and this is a cause arising under the Constitution and laws of the United States", which presents a case cognizable by the courts of the United States.

### Opinion.

There is no charge of fraud in the joining of any of the parties as defendant, but the basis of the application for removal is that there exists on the face of the pleadings a separate controversy between citizens of different states. Succinctly stated, the petition in the State court alleges that the plaintiff, a Louisiana Corporation, executed to and in favor of Acadian, also a citizen of this state, an assignment of an undivided interest to the extent of sixty-eight and three-fourths per cent (68 3/4%) of the seven-eighths (7/8) working interest in a mineral lease covering certain lands in St. Martin Parish, on terms and conditions, which the Acadian has failed and refused to perform, for which reason, cancellation and recision should be decreed; and further in the last amendment that portions of that interest have been transferred to the present applicants for removal, which should also be cancelled and set aside because of the things charged to Acadian.

At the threshold, the question arises, could any court decide the issues presented, even as between Iberia and Acadian in the original petition, without seriously affecting the interest of these non-residents? It is true that that petition did not disclose the names of persons to whom Acadian had transferred interests in the lease, but it did charge that the defendant had "disposed of interest and oil payments out of its assigned interest in said leased property to an amount exceeding such interest * * *." This, it would seem, would have caused the court to inquire who they were and why they were not made parties, since to annul the transfer would have the effect of wiping those interests out. On the other hand, if the suit had been filed against the non-residents only by the Iberia with the same allegations of default on the part of the assignee, Acadian, I can not see how the court could have decreed the annulment of the assignment from the former to the latter without its presence in the case. All of the breaching acts and misdeeds were charged to Acadian, and none to the non-residents, yet such a suit against them would have put them to the necessity of proving and defending Acadian's conduct and the latter's interest therein, certainly to the extent of the obligations and promises which it had made to these non-residents, would have been seriously affected. If plaintiff in the supposed suit were successful in annulling the transfer from Iberia to Acadian as to these non-residents, the latter not being party thereto, it would have been left in the position of probably having to defend an action in damages by the non-residents under a judgment as to which it had never been heard, but which, nevertheless, would have been final as to the defendants therein.

■ No copies of the transfers to the citizens of Mississippi (which are also sought to be annulled in the State court) were attached to or made part of the petitions in the State court, but they are before this court, attached to an application by these same non-residents to have this court appoint a receiver for the same property, and I think, the court may, therefore, take notice of them. Each bears the stamp

"not to be recorded" and declares that Acadian "acquired from" Iberia "certain lease rights entitling said corporation to explore for oil and gas and/or other minerals from the" property in question; that it was authorized under the transfer from Iberia "to make assignments, in whole or in part, either as to superficial area, horizons or as to its proportion of minerals that should be recovered or produced therefrom", and for the sum of "$10.00" and other considerations, it had "assigned, set over, transferred and conveyed unto" Evelyn J. and A. C. Buxton, "the equal one-one hundred and twenty-eighth (1/128th) part of the sixty-eight and three-fourths per cent (68 3/4ths%) of the seven-eighths (7/8ths) proportion of the oil, gas and all other minerals to which lessor may be entitled under the provisions of its lease aforesaid * * * under the terms, conditions and provisions of said lease." The said transfer or agreement further declared that it was the intention to execute the assignments under Article 2451 of the State Civil Code and was not to be construed as constituting a partnership between the parties.

Acadian then bound itself directly to these assignees to perform extensive obligations with respect to drilling and developing the property, substantially as provided in the original lease, at its own expense and that "neither assignee or the interest herein conveyed shall be charged with any obligations with respect thereto." However, notwithstanding this provision, a subsequent one declares that after the completion of the "first well as a producer, the assignee, as an additional consideration for the interest herein conveyed, and for the services being rendered by assignor" authorizes the latter to deduct from any part of the proceeds coming to assignees in the proportion that their interest bears to the oil produced, their part of the cost of the drilling, operating and maintaining any and all subsequent wells, and that all materials and machinery should "become the exclusive property of the assignor." It also provides for the payment of certain salaries of managers, bookkeepers, office rent, etc., in like proportions. Otherwise, it limits the responsibility of the assignees for any such expense to the oil or other minerals which may be produced. It further declares that the assignees have thereby appointed Acadian "their attorney in fact, coupled with an interest * * * with full power and authority to do and perform any and all acts and things whatsoever requisite and necessary to be done in giving effect to this agreement, etc."; and specially authorizes the assignor to sell assignees' part of the oil and other minerals and requires settlement therefor to be made every thirty days.

If this were a suit in which the present applicants were suing for the recognition of their interest, which it is alleged they own in the lease and for an accounting by either the Acadian or Iberia, or both, I do not believe that Iberia would have been an indispensable party or that it would have been necessary to make other interest holders parties. The success or failure of having that interest recognized or of having an accounting would not have affected conclusively or adversely anyone, but those interested in that case. But the demand is for the annulment of the assignment from Iberia to Acadian, which is the very foundation of the rights of these applicants, and while no one can be bound by a judgment in a case to which he is not party or privy, the annulment of this assignment in whole or in part would have the effect of upsetting and confusing the relations and obligations not only as to the assignees and assignor, but also as to any transfers of either Iberia or Acadian. If this case were removed as to these applicants, it would, of course, bring into this jurisdiction all parties; Acadian would necessarily be arrayed on the same side as these non-residents and adversely to Iberia, plaintiff in the suit in the State court, with the result that it would place citizens of the same State on opposite sides and jurisdiction would be ousted for the reason that the controversy could not be wholly determined between applicants and Iberia, without affecting the interest of the others.

The principle involved, I think, is substantially the same as that in the early leading case of Shields v. Barrow, 17 How. 130, 140, 15 L.Ed. 158, which involved the transfer of an interest in real estate in Louisiana. Barrow had, in 1836, sold to Shields certain plantations and slaves in Louisiana for a consideration of $227,000, represented by notes indorsed by others, payable in installments. The sum of $107,000 had been paid when an agreement was reached by which the property was reconveyed to Barrow, and in addition, he was given notes in the sum of $32,000, in varying amounts, by Shields and his indorsers, likewise indorsed each by the other in settlement of an attachment

previously levied, which was thereby released and further liability upon the previous notes discharged. Becoming dissatisfied with the compromise, Barrow sued to annul it. The suit was brought in the Federal Court for the Eastern District of Louisiana against certain of the parties who were non-residents without joining the others. It was held that all were indispensable parties. The court reviewed the law on the subject and pointed out that there were three classes of persons who could be made parties to a suit, to-wit: (1) Formal parties; (2) persons having an interest in the controversy, but who would not be adversely affected; and (3) persons who not only have an interest in the controversy, but an interest of such a nature that a final decree can not be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. I quote from the case as follows:

"A bill to rescind a contract affords an example of this kind. For, if only a part of those interested in the contract are before the court, a decree of rescission must either destroy the rights of those who are absent, or leave the contract in full force as respects them; while it is set aside, and the contracting parties restored to their former condition, as to the others. We do not say that no case can arise in which this may be done; but it must be a case in which the rights of those before the court are completely separable from the rights of those absent, otherwise the latter are indispensable parties.

"Now it will be perceived, that in Russell v. Clark's Executors [7 Cranch 69, 3 L.Ed. 271], this court, after considering the embarrassments which attend the exercise of the equity jurisdiction of the circuit courts of the United States, advanced as far as this: They declared that formal parties may be dispensed with when they cannot be reached; that persons having rights which must be affected by a decree, cannot be dispensed with; and they express a doubt concerning the other class of parties. This doubt is solved in favor of the jurisdiction in subsequent cases, but without infringing upon what was held in Russell v. Clark's Executors [supra], concerning the incapacity of the court to give relief, when that relief necessarily involves the rights of absent persons. As to formal or unnecessary parties, see Wormley

v. Wormley, 8 Wheat. [421] 451 [5 L.Ed. 651]; Carneal v. Banks, 10 [Wheat. 181] 188 [6 L.Ed. 297]; Vattier v. Hinde, 7 Pet. [252] 266 [8 L.Ed. 675]. As to parties having a substantial interest, but not so connected with the controversy that their joinder is indispensable, see Cameron v. McRoberts, 3 Wheat. 591 [4 L.Ed. 467]; Osborn v. Bank of United States, 9 [Wheat.] 738 [6 L.Ed. 204]; Harding v. Handy, 11 [Wheat. 103] 132 [6 L.Ed. 429]. As to parties having an interest which is inseparable from the interests of those before the court, and who are, therefore, indispensable parties, see Cameron v. McRoberts, 3 [Wheat.] 591 [4 L.Ed. 467]; Mallow v. Hinde, 12 [Wheat. 193] 197 [6 L.Ed. 599]."

A comparatively recent case, more nearly in point, is that of Associated Oil Company v. Miller et al., 5 Cir., 269 F. 16, 17, in which plaintiff, a California Corporation, sued Gulf Producing Company and two individuals, all citizens of Texas, to enjoin them from interfering with plaintiff's possession of certain mineral property in said last mentioned state, held by plaintiff, under an instrument "executed between it [the plaintiff] and the Rio Bravo Oil Company (hereafter called Rio), * * [also] citizens of Texas." The facts therein were stipulated and showed the Rio had executed a conveyance to plaintiff transferring "all of those certain oil, gas, and mineral rights owned by Rio * * * in and under 87 described tracts of land" in consideration of the sum of $10 and the performance of certain extensive stipulations and conditions, including the drilling of wells, payment of royalties, etc. The bill charged that the defendants were claiming certain interests in the land and denying complainants rights under the conveyance from Rio; but that under its transfer, complainants had the exclusive rights to possession and ownership of oil produced and was entitled to enjoin the defendants from interfering therewith. Rio, the transferer, was not joined as party plaintiff, and the district court dismissed the bill because of its absence from the case as an "indispensable party." It is stated in the opinion by the Court of Appeals for this, the Fifth Circuit, that respondents, appellees, contended that the "right, title and interest reserved to the Rio" was such "that no decree can be rendered in this case without its presence as a party, as it will be necessarily and di-

rectly affected by such decree." In disposing of the case, the court through Judge King, at page 19 of 269 F., said:

"It is quite evident that, whether the effect of this conveyance is to vest a title to the oil, gas, and other minerals, therein described as conveyed to the complainant, as in the cases of Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A. 1917F, 989, and Crabb v. Bell (Tex.Civ. App.) 220 S.W. 623, or an option, as in the cases of National Oil & Pipe Line Co. et al. v. Teel (Tex.Civ.App.) 67 S.W. 545 (affirmed by the Supreme Court of Texas 95 Tex. 586, 68 S.W. 979), and Hitson v. Gilman (Tex.Civ.App.) 220 S.W. 140, the same does not divest the interest of the grantor in the entire oil, gas, and other minerals, but that it reserves to the Rio Bravo Oil Company an interest in each and every part of the oil and gas so conveyed. While the conveyance purports to grant the entire right in whatever oil and other minerals are contained in this land, it does so only for the purposes of developing and raising the same for the benefit of both grantor and grantee, and a failure to carry on these operations for joint account divests all title in complainant, and revests it in the Rio Bravo Oil Company. While a nominal consideration of $10 is mentioned, the instrument recites that—

" 'The consideration to the grantor is the payment of the royalties and the performance of the obligations hereinafter imposed upon the grantee, said payments and obligations each being conditions upon default in the performance of which the rights herein conveyed to said grantee shall cease and terminate (unless such default is one that comes within the arbitration clause hereinafter set out), and all such rights shall thereupon be revested in the grantor, the Rio Bravo Oil Company.'

"The consideration of the conveyance is to be derived from the exploration for the oil and other minerals in the land for the joint benefit of the two parties to the conveyance, reserving to the Rio Bravo Oil Company the title in kind to one-eighth of the oil and gas produced, at its election, and also a one-half interest in the remainder of the oil and gas so produced, after the payment of the royalty mentioned and the defraying of the expenses of production, as specified. The instrument is therefore an executory contract for the production of the oil and other minerals for the benefit of both the Rio Bravo Oil Com-

pany and complainants, and the Rio Bravo Oil Company has rights of re-entry and reinvestiture of title upon a failure of the complainant to perform its part of this contract, or upon its abandonment thereof.

"The effect of the decree in this case, either for the complainant or against it, would operate as directly and effectively upon the rights of the Rio Bravo Oil Company under this contract as it would upon the rights of the Associated Oil Company. The situation of the Rio Bravo Oil Company comes directly within the description of an indispensable party, as laid down in the leading case of Shields v. Barrow, 17 How. 130, 15 L.Ed. 158:

" 'Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.'

"The same question was presented to this court in the case of Vincent Oil Co. v. Gulf Refining Co. of Louisiana, 195 F. 434, 115 C.C.A. 336. Vincent and associates were the owners of 144 acres of land situated in Louisiana. They made a conveyance or lease conveying all oil, gas, and mineral in the land to one Staiti, a citizen of Texas, reserving a one-eighth royalty. Staiti transferred this lease to Vincent Oil Company. Vincent and associates, claiming that this lease had been forfeited and annulled, and treating it as void, leased a portion of said land to George W. Hooks. Hooks assigned one-half undivided interest in said lease to the Gulf Refining Company, a Louisiana corporation, and by a separate instrument at a later time assigned the other one-half interest to the Producers' Oil Company, a Texas corporation. The Vincent Oil Company filed a bill against the Gulf Refining Company, not making the Producers' Oil Company a party defendant, seeking relief alone against the Gulf Refining Company in respect to its one-half interest. It was conceded that the Producers' Oil Company was omitted because, being a Texas corporation and the assignor of complainant being a citizen of Texas, its presence would oust the jurisdiction of the court. The court held:

" 'It has always been the constant aim and purpose of an equity court to do com-

plete justice by deciding and settling the rights of all persons interested in the subject of the suit, so as to make it safe to the parties to obey the orders of the court and prevent future litigation. To attempt to settle the disputes described in the bill without the presence of the Producers' Oil Company would not only affect its rights and possession, but would leave the controversy itself in an unsettled condition—a condition tending to cause further litigation. * * * The principles announced in decisions which are controlling here fully sustain the view that the Producers' Oil Company is an indispensable party to this suit. California v. Southern Pacific Co., 157 U.S. 229, 15 S.Ct. 591, 39 L.Ed. 683; Minnesota v. Northern Securities Co., 184 U.S. 199, 22 S.Ct. 308, 46 L.Ed. 499; Barney v. Baltimore City, 6 Wall. 280, 18 L.Ed. 825; Christian v. Atlantic & N. C. Railroad, 133 U.S. 233, 241, 10 S.Ct. 260, 33 L.Ed. 589.'

"The present suit is brought to enforce the rights created by the contract entered into between the Rio Bravo Oil Company and the Associated Oil Company, the complainant. The prayer of the bill is to remove the adversary rights asserted by the respondents as a cloud upon the title to the interest described in said conveyance, so as to permit the carrying out by the complainant of its prospecting for said oil and minerals. The Rio Bravo Oil Company has a vital interest under said contract or conveyance. A decree adverse to the complainant will deprive the Rio Bravo Oil Company of all of its anticipated rights and benefits under this contract. A decree in favor of the complainant will inure equally to its benefit. The decree in this case, therefore, will operate as directly and effectively upon the rights of the Rio Bravo Oil Company as upon the rights of the Associated Oil Company. McConnell v. Dennis [8 Cir.] 153 F. 547, 82 C.C.A. 501; Arkansas S. E. R. R. Co. v. Union Sawmill Co [5 Cir.] 154 F. 304, 83 C.C.A. 224."

In the last cited case, the complainant was seeking to enforce the conveyance, similar to the one in the present case; while here, the suit is for annulment. However, in both cases, the causes of action rested upon a lease or conveyance in which vital interest of other parties were involved and to be affected by whatever judgment was rendered, and it would seem that the reason for saying they were indispensable parties is as good in one case as in the other.

Petitioners for removal have cited a number of cases in support of their contention. The first three cases cited (Miss. & R. R. B. Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; Young v. So. Pac. Co., 2 Cir., 15 F.2d 280; and Hoffman v. Lynch, D.C., 23 F.2d 518) merely announce general principles, and have no immediate bearing upon the case before this court. In the fourth cited authority, Barnett v. Mayes, 10 Cir., 43 F.2d 521, the Federal court had already acquired jurisdiction and possession through proper proceedings and the appointment of a receiver, and it was held that under those circumstances it could determine any and all claims to the property whether between citizens of the same state or not. It quoted from a number of decisions by the U. S. Supreme Court to sustain that conclusion. No such situation exists in the present case.

In Brown v. Empire Gas & Fuel Company, D.C., 26 F.2d 100, the plaintiff alleged himself to be the owner of the fee title of certain real estate; that he had executed a lease thereon to one Allman with certain others; that Allman had drilled certain producing wells which had thereafter ceased to produce and the lease should be cancelled as to those portions of the property; and that Allman had assigned the lease to Empire Gas & Fuel Company, under an express provision thereof. The suit was against both Allman and the Empire to cancel, as above stated, as to the portions of land upon which production had ceased. The bill alleged the giving of certain statutory notices to the defendants to cancel and release the property, which they had failed to do, and demanded payment of both actual and statutory damages as well as attorneys' fees. The plaintiff and Allman were both residents of Kansas, while the Corporation was a non-resident. The following quoted from the decision, I think, clearly distinguishes it from the present case: "After the assignment of the lease in August, 1926, the action, as far as it prays for a cancellation of the lease, concerns the assignee, the Empire Gas & Fuel Company, alone. As far as the action for statutory damages is concerned, that action is against the Empire Company alone. While the statutory notice was served upon both of the defendants, the defendant Allman was utterly without power to comply with the notice, for, if Allman had executed a release as prayed for by the notice, it would have been of no effect in canceling the lease of record, for the record title in the lease stood in the name of the Empire

Company at the time the notice was served. Since the defendant Allman could not have possibly complied with the notice if he had been disposed so to do, he cannot be held for damages because of his failure. As far as the prayer for damages on account of alleged failure to diligently develop the lease, the controversy is likewise separable. The implied covenant to diligently develop is one that necessarily runs with the land; if, during the time that Mr. Allman owned this lease, he breached the covenant, a controversy between the plaintiff and Mr. Allman would arise out of the facts as they existed up to the time that he assigned the lease. As to any controversy between the plaintiff and the Empire Company for failure to diligently develop the lease, that controversy would depend upon the facts as they existed after the assignment. In short, any controversy that may exist between the plaintiff and Mr. Allman is entirely separate and distinct from any controversy that exists between him and the Empire Company. The petition states no cause of action against Mr. Allman as far as the petition asks for a cancellation of the lease, or for statutory damages."

The case of Hudson v. Texas Gulf Sulphur Company, 2 Cir., 72 F.2d 251, 254, without finding it necessary to discuss the rather complicated nature of the pleadings and issues, it would appear, disclosed a distinct cause of action against the non-resident corporation, Texas Gulf Sulphur Company, from that against the individuals who were charged with fraud and conspiracy in disposing of the sulphur lease in the state of Texas. It was said: "This suit was started in the state Supreme Court and removed to the District Court, and a motion to remand was denied. There was a separable controversy stated as to the Texas Gulf Sulphur Company as set forth in the petition for removal. The suit was between it, a citizen of another state, and the appellants. The relief asked against it was that it be directed to return, convey, and assign to the appellants all the properties transferred under the agreement of December 31, 1918, and to account for all profits, incomes, and increments thereof and therefrom. The relief sought against Wing and Snyder was that they be directed to account for all profits, incomes, and increments derived by them from the alleged secret and fraudulent agreements between them and the appellee corporation. As to Wing and Doran, it was asked that they join in the execution of deeds, assignments, and other necessary documents to revest in appellants the titles and rights which they parted with by the contract of December 31, 1918. Such prayers for relief show a separable controversy as to the Texas Gulf Sulphur Company. None of the others are necessary parties to the action against the corporation, either for an accounting or for a reconveyance. The corporation holds title to the property. The suit was removable. Venner v. Southern Pac. Co., 2 Cir., 279 F. 832.

The remaining cited cases are also in support of general principles and have no immediate bearing here.

My view is that removal should be denied. Proper decree should be presented.